**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Fernando MORALES,
Defendant–Appellant.**

**No. 87–6163.**

United States Court of Appeals,
Fifth Circuit.

Aug. 19, 1988.

Mark A. DiCarlo, Corpus Christi (court-appointed), for defendant-appellant.

Frances H. Stacy, Asst. U.S. Atty., Henry Oncken, U.S. Atty., Appellate Div., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GARZA and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Fernando Morales appeals his conviction by a jury for possession with intent to distribute 386 pounds of marihuana, 21 U.S.C. § 841(a)(1), contending that the verdict is not supported by the evidence. He also contends that his sentence was illegally enhanced by a probated state court sentence, § 841(b)(1)(B). Finding ample evidence to support the conviction and no error in the sentencing, we affirm.

## Background

At approximately 6:00 p.m. on May 25, 1987, Morales, an over-the-road truckdriver, received a call from the dispatcher of his employer, a freight shipper, that it had a load of produce to be taken from the company's yard in Edinburgh, Texas to a supermarket in Houston. Morales accepted the assignment and requested a departure time of 9:00 p.m. This request was at first granted by the dispatcher but was promptly withdrawn when the owner of the freightline was advised. The owner noted that the produce had been loaded since 3:00 p.m. and had to be delivered in Houston by 5:00 the next morning. Morales was informed of the owner's orders and agreed to comply.

Despite the specific instructions of his employer, and his response, Morales tarried at his mother's house and did not leave to pick up the tractor-trailer until approximately 8:30 p.m. He then backtracked to his mother's house for supper, departing around 10:00 p.m. but promptly returning again, ostensibly to retrieve his wallet. He then decided to await his wife's return from work around 11:30 p.m. Only thereafter did he depart for Houston, taking highway 77.

Company policy required drivers destined for points north, such as Houston, to do so via highway 281, the roadway upon which the company's yard was located. This was done to combat difficulties experienced by trucking companies with the illegal hauling of aliens and loads of contraband. This route requires passage through the Border Patrol checkpoint at Falfurrias, Texas, which operates on a 24–hour, seven-day schedule. Despite this specific policy, which prohibited drivers from detouring south under penalty of sanctions, up to and including termination, Morales deviated. He proceeded south from the truckyard, ultimately proceeding north on highway 77. This route goes through the Border Patrol checkpoint at Sarita, which is not manned on a 24–hour schedule and is frequently closed at midnight.

Morales arrived at the Sarita checkpoint around 1:00 a.m. The checkpoint was open. Morales presented the bill of lading. When the agent noted that the last items had been loaded at 2:56 p.m. he directed Morales to the secondary inspection station and asked for entry into the trailer. Morales became visibly nervous. The trailer was only half loaded and the agent noted that the onions were irregularly stacked. The agent moved a few sacks of onions and found the reason for the irregularity—two bags containing 175 kilos of marihuana.

Morales was indicted and found guilty of possession with intent to distribute marihuana in violation of 21 U.S.C. § 841(a)(1). Based on a prior state court felony conviction for possession of marihuana, the court imposed an enhanced sentence of ten years imprisonment to be followed by an eight-year supervised release term, 18 U.S.C. § 841(b)(1)(B).

## Analysis

### 1. Sufficiency of the evidence.

■ An appellate court faced with a challenge to the sufficiency of the evidence to support a criminal conviction must view the evidence in the light most favorable to the verdict, and determine whether any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Brock,* 833 F.2d 519 (5th Cir.1987) (other citations omitted). We must accept all reasonable inferences supportive of the verdict which may be drawn from the evidence, and accept all implicit credibility choices. *United States v. Vergara,* 687 F.2d 57 (5th Cir. 1982). Possession of a controlled substance in violation of 21 U.S.C. § 841(a)(1) may be actual or constructive. *United States v. Tolliver,* 780 F.2d 1177 (5th Cir. 1986), *vacated on other grounds,* 479 U.S. 1074, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987); *United States v. Vergara.* Constructive possession may be established by a showing of ownership, dominion, or control over the premises or vehicle concealing the contraband. *United States v. Vergara; United States v. Wilson,* 657 F.2d 755 (5th Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982) (citations omitted).

It cannot be gainsaid that Morales had dominion and control of the truck and trailer from the time he took possession at his employer's yard just before 9:00 p.m. and his arrest at the Sarita checkpoint four hours later. He denied knowledge of the marihuana to the arresting officer, maintaining that he did not load the trailer. The question then resolves itself into whether the jury reasonably could have inferred actual or constructive knowledge.

The record reflects the scenario set forth above. It also includes the testimony of the employee who picked up the loads terminating with the final load of onions just before 3:00 p.m. That employee testified there was no marihuana in the trailer, that he stood at the back of the trailer and observed the loading of the produce and no marihuana was placed inside. He also testified that he then parked the trailer directly in front of the dispatcher's office, within her immediate view and that of the security guard, where the trailer remained until taken by Morales. The dispatcher confirmed this testimony.

The jury reasonably could infer that the marihuana was placed in the trailer after Morales took possession of it, and that Morales had either actual or constructive knowledge of its presence. The evidence amply supports the conviction.

2. *The sentence.*

The trial judge imposed the maximum sentence prescribed by 21 U.S.C. § 841(b)(1)(B) because of a prior state court felony conviction for possession of marihuana. Morales had pled guilty to felony possession of marihuana in state court in Corsicana, Texas, and on March 20, 1987 he was fined $500 and sentenced to confinement for five years by the Texas Department of Corrections. The confinement was suspended and five years probation was imposed. There was no appeal. The time for taking an appeal has long-since elapsed.

Morales objected to the enhanced sentence, contending that under Texas law his conviction was not final for purposes of enhancement because of the probated sentence. *See Murphy v. State,* 689 S.W.2d 341 (Tex.Crim.App.1985); *Davis v. Estelle,* 529 F.2d 437 (5th Cir.1976). The trial court overruled the objection, observing in passing that the conviction satisfied the federal statute.

■ Morales reurges the objection, maintaining that when Congress used the words "have become final" with reference to convictions in 21 U.S.C. § 841(b)(1)(B) it meant convictions that were final under the laws of the jurisdiction from whence the convictions emanated.

We first conclude and hold that the meaning to be assigned to the term "have become final" in 21 U.S.C. § 841(b)(1)(B) is a question of federal, not state law. *Dickerson v. New Banner Institute,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); *United States v. Lehmann,* 613 F.2d 130 (5th Cir.1980). We may examine state law, for informational purposes, but we are not bound by its treatment of a felony conviction when we apply the federal sentence-enhancement provisions.

■ Considering this issue under the federal gun control enhancement provisions, 18 U.S.C. § 922(g), (h) (1982), the Supreme Court held that the term "convicted" included a plea of guilty to a state charge followed by a sentence of probation. *Dickerson,* 460 U.S. at 114, 103 S.Ct. at 992–93. We have previously held that persons given probated sentences for Texas felony convictions, whether the probations are still pending, *United States v. Lehmann,* 613 F.2d at 135, or successfully completed, *United States v. Padia,* 584 F.2d 85 (5th Cir.1978), are persons "convicted" for purposes of 18 U.S.C. § 922(g), (h) (1982). The rationale of those precedents furnish guidance today.

Our colleagues of the Third, Ninth, and Eleventh Circuits have heretofore read the final conviction language of § 841(b)(1)(B) to exclude convictions subject to direct appeal. *United States v. Allen,* 566 F.2d 1193 (3d Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978); *Williams v. United States,* 651 F.2d 648 (9th Cir.1981); *United States v. Lippner,* 676 F.2d 456 (11th Cir.1982). As the

*Lippner* court reasoned, such a holding works to "avoid the necessity of resentencing should the conviction be overturned." *Lippner,* 676 F.2d at 467. We agree with our colleagues and now hold that the final-conviction language of § 841(b)(1)(B) applies to a conviction which is no longer subject to examination on direct appeal, including an application for certiorari to the United States Supreme Court, either because of disposition on appeal and conclusion of the appellate process, or because of the passage, without action, of the time for seeking appellate review. *See also United States v. Lemaire,* 826 F.2d 387, 390 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1223, 99 L.Ed.2d 423 (1988) (interpreting "final judgment" under 12 U.S.C. § 91). Morales did not appeal his Texas felony conviction and the time for doing so has passed; thus, for federal sentencing enhancement purposes under § 841(b)(1)(B), that conviction has become final. The trial court did not err in sentencing Morales.

AFFIRMED.