RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JERMAINE BROWN,

*Defendant-Appellant.*

No. 24-6029

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:23-cr-20241-2—Jon Phipps McCalla, District Judge.

Decided and Filed:  August 14, 2025

Before:  MOORE, GRIFFIN, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Mary H. Morris, Gregory A. Wagner, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

MOORE, J., delivered the opinion of the court in which GRIFFIN, J., concurred, and NALBANDIAN, J., concurred in the judgment.  NALBANDIAN, J. (pg. 5), delivered a separate concurring opinion.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  Defendant-appellant Jermaine Brown brings an as-applied Second Amendment challenge to the constitutionality of his conviction for violating 18 U.S.C. § 922(o), which prohibits the transfer or possession of machineguns.  As a

matter of circuit law, the Second Amendment does not protect a right to possess machineguns. Accordingly, we **AFFIRM** Brown's conviction.

## I.  BACKGROUND

Brown was convicted of possessing a machinegun in violation of 18 U.S.C. § 922(o).  R. 65 (Judgment at 1) (Page ID #182).[1]  Brown timely appealed, arguing—as he did unsuccessfully before the district court, R. 61 (Order Den. Mot. to Dismiss the Indictment at 4) (Page ID #173)—that his conviction under § 922(o) is an unconstitutional deprivation of his Second Amendment rights.[2]  Circuit precedent requires the opposite conclusion.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo the district court's denial of Brown's motion to dismiss the indictment and Brown's resulting conviction and sentence because they "implicate[] the constitutionality of a federal statute."  *United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024).

### B.  Section 922(o)

The instant appeal asks whether this court's precedent—holding that the possession of machineguns covered by 18 U.S.C. § 922(o) is unprotected by the Second Amendment—is still good law under the Supreme Court's holding in *Bruen*.  Our circuit has now answered that question in the affirmative.  *United States v. Bridges*, No. 24-5874, slip op. (6th Cir. Aug. 7, 2025).

---

[1]Brown was charged with possession of a machine-gun conversion device, also known as a Glock switch, R. 2 (Indictment at 2) (Page ID #4), which neither party contests is a machinegun for purposes of 18 U.S.C. § 922(o).  *See* Appellant Br. at 3; Appellee Br. at 4.

[2]After having pleaded guilty pursuant to a plea agreement, R. 27 (Plea) (Page ID #39), Brown moved to dismiss his indictment on Second Amendment grounds, R. 44 (Mot. to Dismiss at 5) (Page ID #74).  On appeal, neither party challenges the district court's holding that Brown's earlier plea agreement does not preclude his challenge to the constitutionality of 18 U.S.C. § 922(o).  *See* R. 61 (Order Den. Mot. to Dismiss the Indictment at 3–4) (Page ID #172–73).

Shortly after the Supreme Court issued its landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), "we rejected a constitutional challenge to § 922(o), holding that *Heller* 'directly foreclosed' it." *Bridges*, slip op. at 5 (quoting *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009)). Our decision in "*Hamblen* relied on *Heller*'s statement that 'the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes.'" *Id.* at 5–6 (quoting *Hamblen*, 591 F.3d at 474).

Brown argues that *Hamblen* is no longer good law because "it is clearly irreconcilable" with the Supreme Court's recent holding in *New York State Pistol & Rifle Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Appellant Br. at 22. Brown argues that "*Hamblen* relied upon *Heller*, which employed the means-end analysis rejected in *Bruen*." *Id.* This misreads both *Bruen* and *Heller*. The Supreme Court in *Bruen* "did not call *Heller* into question; to the contrary, *Bruen* was an unqualified endorsement of *Heller*." *Bridges*, slip op. at 7. "When *Bruen* articulated its text-and-history test, it stated that it was making *Heller*'s standard 'more explicit,' . . . that the test was '[i]n keeping with *Heller*,' . . . and that this test was the same one 'set forth in *Heller*.'" *Id.* (alteration in *Bridges*) (quoting *Bruen*, 597 U.S. at 31, 17, 26). *Bruen* overturned only those post-*Heller* decisions that "had *mis*applied *Heller* by erroneously adding a means-end-scrutiny step to *Heller*'s text-and-history standard." *Id.* at 8. Any "pre-*Bruen* case[] that did not wrongfully apply means-end scrutiny remain[s] binding." *Id.* *Hamblen* did not apply means-end scrutiny. *Id.*

*Hamblen* "relied entirely on *Heller*'s clear statements, rooted in historical analysis, that applied to machineguns." *Id.* "The historical sources that *Heller* reviewed demonstrate a 'tradition of prohibiting the carrying of dangerous and unusual weapons.'" *Id.* (quoting *Heller*, 554 U.S. at 627). "And that tradition supports the corollary that 'the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes.'" *Id.* (quoting *Heller*, 554 U.S. at 625). *Heller* specifically identified machineguns and M-16s as examples of such weapons. *Heller*, 554 U.S. at 624, 627. "*Hamblen* did not conduct interest-balancing or means-end tests; rather, it straightforwardly applied *Heller*, a case that *Bruen* emphatically endorsed." *Bridges*, slip op. at 8. "Thus, even in *Bruen*'s wake, *Hamblen* remains

binding authority." *Id.* Brown's challenge[3] to § 922(o) must therefore fail as a matter of circuit precedent. *Hamblen*, 591 F.3d at 474; *see also Bridges*, slip op. at 9–16 (conducting "a fresh application of the *Heller*/*Bruen* text-and-history" methodology and concluding that § 922(o) is constitutional because machineguns are "both dangerous and unusual" under *Bruen*'s second step).

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** Brown's conviction.

---

[3]Brown argues that § 922(o) is unconstitutional as applied to him because he did not bear a machinegun "in such a manner as to 'terrorize the people.'"  Appellant Br. at 21 (quoting *Bruen*, 597 U.S. at 46–47).  But this argument and its reliance on *Bruen* misunderstands the nature of the statute at issue here, which does not regulate "*the manner* of public carry," as the statute in *Bruen* did.  *Bruen*, 597 U.S. at 59.  Rather, § 922(o) bans the possession and transfer of "certain types of weapons."  *Heller*, 554 U.S. at 623.  Brown's reliance on *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), is thus inapposite.  *Williams* concerned 18 U.S.C. § 922(g)(1), which prohibits any gun ownership by a particular class of people—felons.  113 F.4th at 642.  There, we found that the plain text of the Second Amendment presumptively protected the prohibited conduct, but that, as applied to dangerous felons, § 922(g)(1) was constitutional because it was consistent with the nation's history and tradition of disarming dangerous people.  *Id.* at 648–50, 663.  In contrast, Brown's dangerousness or lack thereof is not relevant to our consideration of § 922(o) because it is well established that the historical scope of the Second Amendment does not extend to certain *types* of weapons—namely dangerous and unusual weapons—regardless of the *manner* in which they are carried or the specific characteristics of their bearers.  *Heller*, 554 U.S. at 627; *Bridges*, slip op. at 11.

---

**OPINION**

---

NALBANDIAN, Circuit Judge, concurring in the judgment. In *United States v. Bridges*, this circuit recently rejected a Second Amendment challenge to 18 U.S.C. § 922(o), the federal statute banning machinegun possession or sale. *See* — F.4th — (6th Cir. 2025). We held that § 922(o) comports with our nation's history and tradition of regulating "dangerous and unusual weapons." *Id.* at —.

I sat on the panel in *Bridges*. And although I concurred in the judgment, I would have decided the case on narrower grounds. Bridges' facial challenge failed and his as-applied challenge came to us on plain error. *See Bridges*, — F.4th at — (Nalbandian, J., concurring in part and concurring in judgment). So I would have resolved *Bridges* on the grounds that any alleged error by the district court wasn't plain. I also disagreed with the majority's treatment of our pre-*Bruen* precedent in *Hamblen v. United States*, 591 F.3d 471 (6th Cir. 2009), which the majority in this case reaffirms. As I explained, I believe that *Hamblen* is not consistent with *Bruen*'s command to conduct a historical analysis. *Id.* at —. Nor did I fully share the *Bridges* majority's view of how to analyze the "dangerous and unusual weapons" doctrine. *Id.* at —.

But *Bridges* is now binding circuit precedent. And Jermaine Brown was convicted of possessing the same type of machinegun-conversion device as Bridges. So I agree that we should apply *Bridges* to this case. And while future courts likely will find some preserved as-applied challenges that *Bridges* does not govern, this case isn't it.[1] So Brown's conviction should be affirmed.

With these observations, I concur in the judgment.

---

[1]It's true that Bridges did not preserve his as-applied argument, which meant that we reviewed his Second Amendment challenge for plain error. And Brown preserved his challenge. Nevertheless, I read the majority opinion in *Bridges* as concluding that the district court made no "error" in rejecting Bridges' as-applied challenge, plain or otherwise.

And as I explained in *Bridges*, even if some machineguns warrant constitutional protection, a Glock switch appears to fall within the traditional definition of dangerous and unusual weapons—particularly adapted for private violence and criminal activity, and not commonly owned for lawful purposes. *Id.* at —.